# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **KRYSTLE LOOMIS,** | : | CIVIL ACTION NO. 3:20-CV-1610 |
| Plaintiff | : | (Judge Conner) |
| v. | : | |
| **MONTROSE BOROUGH POLICE DEPARTMENT, JOSHUA DIDDICK,** and **DOLLAR GENERAL,** | : | |
| Defendants | : | |

## MEMORANDUM

Plaintiff Krystle Loomis ("Loomis") advances civil rights claims against defendant Officer Joshua Diddick ("Officer Diddick") and defendant Montrose Borough Police Department (the "Department") pursuant to 42 U.S.C. § 1983 *et seq.*, and an invasion of privacy claim against defendant Dollar General ("Dollar General"). Officer Diddick and the Department move to dismiss Loomis's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). We will partially grant defendants' motion.

**I.    Factual Background & Procedural History**

Loomis is a Pennsylvania resident who was stopped, detained, and searched by Montrose Borough Police Department officers, with the help of Montrose County Sheriff's Department officers, on January 30, 2018. (See Doc. 1-5 ¶¶ 1, 3, 5, 9-14). At all times relevant hereto, Montrose Police Department employed Officer Diddick as a police officer and he acted in his capacity as a police officer. (Id. ¶ 5).

Loomis was operating a motor vehicle in the Borough of Montrose on January 30, 2018, when Officer Diddick initiated a traffic stop for an allegedly defective automobile light. (Id. ¶¶ 8, 9). Loomis alleges the light was in fact operational, and that Officer Diddick's justification was a pretext for his personal animus toward Loomis. (Id. ¶¶ 10, 15). According to the complaint, Officer Diddick thereafter detained Loomis "for an extended period of time in violation of her rights and with full knowledge that there was no legitimate basis for the stop." (Id. ¶ 11). This caused Loomis "humiliation and embarrassment in from (sic) of the public with no legitimate purpose." (Id. ¶ 12). Officer Diddick then enlisted Montrose County Sheriff Department officers to conduct a search of her person and, more specifically, a strip search in the office of a nearby Dollar General store. (Id. ¶¶ 13-14). Loomis alleges that this strip search was recorded by Dollar General cameras. (Id. ¶ 14). Loomis seeks monetary and punitive damages for her claimed injuries. (Id. ¶ 18).

The complaint also alleges claims against the Montrose Police Department and Dollar General. It posits that the Department "developed and maintained policies that were either deliberately indifferent to the rights of the citizens, and/or were enforced to protect the rights of citizens." (Id. ¶ 20). The complaint asserts that the Department "[i]nadequately trained its police to respect the rights of citizens they encountered; or [d]id not require the appropriate training; or [f]ailed to investigate complaints against its officer; or [i]gnored all indications that its officers acted properly in the performance of their duties." (Id. ¶ 21). The complaint lastly avers that Dollar General violated Loomis's expectation of privacy

within the store and its office when it recorded—and failed to warn Loomis that she was being recorded—the strip search. (Id. ¶ 25-28).

Loomis originally filed this matter in the Court of Common Pleas of Susquehanna County before defendants removed it to this court. Officer Diddick and the Department then filed a motion to dismiss. While that motion was being briefed, Dollar General filed its answer. The motion to dismiss is fully briefed and ripe for disposition.

## II. **Legal Standard**

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for the dismissal of complaints that fail to state a claim upon which relief may be granted. FED. R. CIV. P. 12(b)(6). When ruling on a motion to dismiss under Rule 12(b)(6), the court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008) (quoting Pinker v. Roche Holdings, Ltd., 292 F.3d 361, 374 n.7 (3d Cir. 2002)).

Federal notice and pleading rules require the complaint to provide "the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Phillips, 515 F.3d at 232 (alteration in original) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). To test the sufficiency of the complaint, the court conducts a three-step inquiry. See Santiago v. Warminster Township, 629 F.3d 121, 130-31 (3d Cir. 2010). In the first step, "the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.'" Id. at 130 (alteration in original) (quoting

3

Ashcroft v. Iqbal, 556 U.S. 662, 675 (2009)). Next, the factual and legal elements of a claim must be separated; well-pleaded facts are accepted as true, while mere legal conclusions may be disregarded. Id. at 131-32; see Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009). Once the court isolates the well-pleaded factual allegations, it must determine whether they are sufficient to show a "plausible claim for relief." Iqbal, 556 U.S. at 679 (citing Twombly, 550 U.S. at 556); Twombly, 550 U.S. at 556. A claim is facially plausible when the plaintiff pleads facts "that allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678.

### III. Discussion

Officer Diddick and the Department (together, the "defendants") seek dismissal of Loomis's Section 1983 claims against them. Section 1983 of Title 42 of the United States Code creates a private cause of action to redress constitutional wrongs committed by state officials. See 42 U.S.C. § 1983. The statute is not a source of substantive rights, but serves as a mechanism for vindicating rights otherwise protected by federal law. Gonzaga Univ. v. Doe, 536 U.S. 273, 284-85 (2002); Kneipp v. Tedder, 95 F.3d 1199, 1204 (3d Cir. 1996). To state a claim under Section 1983, plaintiffs must show a deprivation of a "right secured by the Constitution and the laws of the United States . . . by a person acting under color of state law." Kneipp, 95 F.3d at 1204 (quoting Mark v. Borough of Hatboro, 51 F.3d 1137, 1141 (3d Cir. 1995)). The defendants do not dispute that they were state actors at all times relevant herein. We must therefore determine whether defendants' conduct deprived Loomis of rights secured by the United States Constitution.

### A. Individual Liability[1]

In the case *sub judice*, Loomis avers that Officer Diddick orchestrated an unreasonable search and seizure in violation of the Fourth and Fourteenth Amendments to the United States Constitution, as well as the Pennsylvania Constitution. She seeks money damages for her claims brought under both constitutions. (See Doc. 1-5 ¶¶ 6-18).[2] In response, Officer Diddick invokes the doctrine of qualified immunity.

Qualified immunity protects a state actor who has committed a constitutional violation if the plaintiff's rights were not "clearly established" when the individual acted. Pearson v. Callahan, 555 U.S. 223, 244-45 (2009). No liability will attach if a

---

[1] We take up one threshold issue before turning to the merits of Loomis's Section 1983 claims. In Count I, Loomis alleges a Section 1983 violation against Officer Diddick. The complaint does not specify whether Loomis is asserting an individual-capacity or official-capacity claim against Officer Diddick. (See Doc. 1-5 ¶¶ 6-18). Based on Loomis's complaint, and the parties' invocation of individual- and official-capacity related doctrines, we construe the complaint as asserting both types of claims. See Est. of Tyler *ex rel.* Floyd v. Grossman, 108 F. Supp. 3d 279, 289 n.2 (E.D. Pa. 2015). We quickly dispatch with Loomis's official-capacity claim. As a matter of law, official-capacity claims merge with those claims brought against the municipality that employs the official. See Damiano v. Scranton Sch. Dist., 135 F. Supp. 3d 255, 268-69 (M.D. Pa. 2015) (collecting cases); Brice v. City of York, 528 F. Supp. 2d 504, 516 n.19 (M.D. Pa. 2007) (Conner, J.) (collecting cases). Loomis's official-capacity claim in Count I is therefore subject to dismissal as duplicative of the claims set forth in Count II.

[2] Money damages are unavailable under the Commonwealth's constitution. See Dillard v. Cornick, No. 1:18-CV-70, 2018 WL 4679952, at *3 (M.D. Pa. Sept. 28, 2018) (Conner, C.J.) (citing Pocono Mountain Charter Sch. v. Pocono Mountain Sch. Dist., 442 F. App'x 681, 687 (3d Cir. 2006) (nonprecedential) (quoting Jones v. City of Phila., 890 A.2d 1188, 1208 (Pa. Commw. Ct. 2006)); O'Donnell v. Cumberland Cnty., 195 F. Supp. 3d 724, 730-31 (M.D. Pa. 2016) (collecting cases)); Kornegey v. City of Phila., 299 F. Supp. 3d 675, 685 (E.D. Pa. 2018). We will therefore dismiss with prejudice Loomis's state constitutional claim to the extent it requests monetary relief.

reasonable actor could have believed the challenged conduct was in compliance with settled law. Id.; see also Springer v. Henry, 435 F.3d 268, 280 (3d Cir. 2006).

In the instant matter, Loomis has adequately alleged a constitutional violation. The Fourth Amendment protects against unreasonable searches and seizures. See U.S. CONST. amend. IV. Loomis avers that Officer Diddick effected an unjustified traffic stop and thereafter subjected her—with the help of Montrose County Sheriffs—to a strip search without probable cause. (See Doc. 1-5 ¶¶ 9-15). Assuming the alleged facts (that Officer Diddick and other officers performed these acts without cause) as true, Loomis has alleged a plausible violation of the Fourth Amendment. Further consideration of qualified immunity must await development of the factual record.

We are not persuaded by defendants' contention that Loomis has failed to sufficiently allege Officer Diddick's personal involvement. We recognize that Section 1983 liability cannot depend solely on a *respondeat superior* theory. See Parkell v. Danberg, 833 F.3d 313, 330 (3d Cir. 2016) (quoting Chavarriaga v. N.J. Dep't of Corr., 806 F.3d 210, 227 (3d Cir. 2015)). However, supervisory liability may lie when, *inter alia*, supervisors "directed others to violate [constitutional rights], or, as the persons in charge, had knowledge of and acquiesced in their subordinates' violations." Id. (quoting Santiago, 629 F.3d at 129 n.5 (quotation and alteration marks omitted)). The complaint satisfies this standard. Loomis alleges that, "[u]nder the direction of Defendant Diddick," Montrose County Sheriff's officers subjected her to a strip search, and that Officer Diddick knew he lacked probable

6

cause. (Doc. 1-5 ¶¶ 13-15). Hence, Loomis has adequately pled that Officer Diddick supervised and orchestrated the alleged constitutional violation.

B.   **Municipal Liability**

Loomis also brings a Monell claim against the Department[3] for its alleged maintenance of an unlawful policy and failure to train. Municipalities and other local government entities are "persons" for purposes of Section 1983 liability. Monell v. N.Y.C. Dep't of Social Servs., 436 U.S. 658, 690 (1978). But such entities may not be held liable in a Section 1983 suit for conduct of their employees under a theory of *respondeat superior* liability. Bd. of Cnty. Comm'rs v. Brown, 520 U.S. 397, 403 (1997) (citing Monell, 436 U.S. at 692); see also Colburn v. Upper Darby Township, 946 F.2d 1017, 1027 (3d Cir. 1991). Municipal liability only arises when a government causes an employee to violate another's constitutional rights by an official custom or policy. Monell, 436 U.S. at 690-94; see also Montgomery v. De Simone, 159 F.3d 120, 126 (3d Cir. 1998). To establish liability under Monell, a plaintiff must identify the challenged policy or custom, demonstrate proper attribution to the public entity, and show a causal link between the execution of the policy or custom and the injury suffered. See Natale v. Camden Cnty. Corr. Facility, 318 F.3d 575, 583-84 (3d Cir. 2003).

---

[3] Consistent with the practice of our court of appeals, we will construe these claims as against the Borough of Montrose. For purposes of Monell policy, custom or practice liability under Section 1983, complaints involving claims against a municipal department (such as a police department) should name the municipality as the proper party defendant. See Sorrells v. Phila. Police Dep't, 652 F. App'x 81, 82 (3d Cir. 2016) (nonprecedential) (citing Bonenberger v. Plymouth Twp., 132 F.3d 20, 25 n.4 (3d Cir. 1997)).

7

A policy exists when a decisionmaker possessing final authority to establish public policy with respect to the disputed action issues an official proclamation, policy, or edict. Id. at 584 (quoting Kneipp, 95 F.3d at 1212). By contrast, a custom is an act that is not formally approved but is nonetheless "so widespread as to have the force of law." Id. (quoting Bryan Cnty., 520 U.S. at 404). A plaintiff may also establish municipal liability by demonstrating that a policymaker failed to take affirmative action despite an obvious need to correct the "inadequacy of existing practice [which is] so likely to result in the violation of constitutional rights" that inaction exhibits "deliberate indifference" to the need. Id. (quoting Bryan Cnty., 520 U.S. at 417-18).

A government entity exhibits deliberate indifference when it "disregard[s] a known or obvious consequence of [its] . . . action." Connick v. Thompson, 563 U.S. 51, 61 (2011); see Vargas v. City of Phila., 783 F.3d 962, 974 (3d Cir. 2015). Failure to train amounts to deliberate indifference when it causes a pattern of cognate constitutional violations. See Connick, 563 U.S. at 62; Kelly v. Borough of Carlisle, 622 F.3d 248, 265 (3d Cir. 2010). Alleged training deficiencies must closely relate to the constitutional injury. City of Canton v. Harris, 489 U.S. 378, 391 (1989). The failure-to-act theory of liability is governed by the same causation principles. See Berg v. Cnty. of Allegheny, 219 F.3d 261, 276 (3d Cir. 2000).

Loomis's complaint is devoid of facts to support a Monell claim. Her allegations of municipal liability are purely conclusory. With respect to unlawful-policy theory, the complaint alleges only: "It is believed, and therefore averred, that the Defendant, Police, developed and maintained policies that were either

8

deliberately indifferent to the rights of the citizens, and/or were enforced to protect the rights of citizens." (Doc. 1-5 ¶ 20). The complaint does not identify any policies adopted by the Department that would apply in this case. (See id. ¶¶ 19-23). The complaint therefore permits no inference that the Department issued "an official proclamation, policy[,] or edict" permitting its officers to conduct the alleged search at issue. See Natale, 318 F.3d at 584. Nor does Loomis state that noncompliance with said policies was prevalent, recurring, or silently sanctioned by municipal decisionmakers. See id. Even assuming the Department had adopted a policy of conducting strip searches under the circumstances present in this case, the complaint does not allege that Officer Diddick acted in accordance with this policy or that his compliance with the policy caused the alleged injury. (See id.).

Loomis's failure-to-train theory is likewise deficient. As relevant here, Loomis alleges that the Department has "[i]nadequately trained its police to respect the rights of citizens they encountered," "[d]id not require the appropriate training," or [f]ailed to investigate complaints against its officer." (Id. ¶ 21(a)-(c)). Yet she does not identify a single instance—other than the events of January 30, 2018—to support her claim. See Eberhardinger v. City of York, No. 1:16-CV-2481,

2017 WL 4167642, at *4-5 (M.D. Pa. Sept. 20, 2017) (Conner, C.J.).[4] We will therefore dismiss Loomis's Monell claim.

### C. Punitive Damages

Loomis seeks punitive damages for both Officer Diddick's and the Department's role in causing her alleged injuries. In Section 1983 actions, punitive damages are unavailable against municipalities or individual defendants in their official capacities. See Highhouse v. Wayne Highlands Sch. Dist., 205 F. Supp. 3d 639, 650 (M.D. Pa. 2016) (citing City of Newport v. Fact Concerts, Inc., 453 U.S. 247, 263 (1981); Kentucky v. Graham, 473 U.S. 159, 167 n.13 (1985)). Punitive damages

---

[4] The court recognizes that a single incident may evidence deliberate indifference sufficient to establish Monell liability. See Thomas v. Cumberland Cnty., 749 F.3d 217, 223 (3d Cir. 2014) ("[I]n certain situations, the need for training 'can be said to be so obvious, that failure to do so could properly be characterized as deliberate indifference to constitutional rights' even without a pattern of constitutional violations." (quotation and citations omitted)); Natale, 318 F.3d at 584 ("[A] policy or custom may also exist where the policymaker has failed to act affirmatively at all, [though] the need to take some action to control the agents of the government is so obvious, and the inadequacy of existing practice so likely to result in the violation of constitutional rights, that the policymaker can reasonably be said to have been deliberately indifferent to the need." (internal quotations and citations omitted)). However, we are unpersuaded by Loomis's conclusory argument that defendants' actions were so egregious that they demonstrate systemic deficiencies in training. (See Doc. 6 at 11 ("The actions of the Officers and Deputy [i]n this matter were so egregious that it evidenced a systemic absence of proper procedure and practices within the Montrose Police Department."); see also id. at 10 (describing "systemic failure of training and woeful practices of the Montrose Police Department")). Loomis's complaint lacks any description of training she believes the Department should have provided, or that her injury was a "highly predictable consequence" of the Department's failure to provide said training. Thomas, 749 F.3d at 225 (quoting Connick, 563 U.S. at 64); see also Rothermel v. Dauphin Cnty., No. 1:16-CV-1669, 2020 WL 1467267, at *10 (M.D. Pa. Mar. 26, 2020) (Conner, J.) (observing that "single-incident" liability turns on "[t]he likelihood that the situation will recur and the predictability that an officer lacking specific tools to handle the situation will violate citizens' rights" (citation omitted)), aff'd, No. 20-1769, 2021 WL 2589136 (3d Cir. June 24, 2021).

10

may be available against officials in their individual capacity "when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." Id. at 650-51 (quoting Smith v. Wade, 461 U.S. 30, 56 (1983)).

Although Loomis's allegations regarding the punitive nature of Officer Diddick's purported misconduct are somewhat limited, plaintiff has stated a sufficient basis for this claim. And defendants have failed to offer any meaningful argument challenging the *prima facie* case for punitive damages. (See Doc. 1-5 ¶¶ 8-18; Doc. 4 at 12; Doc. 9 at 6). Consequently, at this procedural juncture, we will deny defendants' motion as it relates to punitive damages against Officer Diddick in his individual capacity.

### D. Leave to Amend

Courts generally must grant leave to amend before dismissing a civil rights claim if a curative amendment is conceivable. See Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002). The deficiencies identified herein are predominantly factual and thus conceivably curable. Accordingly, we will grant leave to amend consistent with this memorandum.

## IV. Conclusion

We will partially grant defendants' motion (Doc. 2) to dismiss. An appropriate order shall issue.

/S/ CHRISTOPHER C. CONNER
Christopher C. Conner
United States District Judge
Middle District of Pennsylvania

Dated: July 8, 2021