IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **KRYSTLE LOOMIS,** | : CIVIL ACTION NO. 3:20-CV-1610 |
| Plaintiff | : (Judge Conner) |
| v. | : |
| **JOSHUA DIDDICK,** | : |
| Defendant | : |

**MEMORANDUM**

Plaintiff Krystle Loomis brings a civil rights claim against defendant Officer Joshua Diddick pursuant to 42 U.S.C. § 1983. Officer Diddick moves for summary judgment on Loomis's claim. We will deny the motion.

**I.    Factual Background & Procedural History**[1]

On January 30, 2018, Loomis had a protracted encounter with Officer Diddick at a Dollar General in Montrose Borough, Susquehanna County. (See Doc. 32-1 at 4). The encounter began around noon when Officer Diddick activated his cruiser lights to initiate a traffic stop on a vehicle operated by Loomis. (See Doc. 32-1 at 4). After Diddick flashed his lights, Loomis pulled her vehicle into the parking lot of

---

[1] Local Rule 56.1 requires that a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56 be supported "by a separate, short, and concise statement of the material facts, in numbered paragraphs, as to which the moving party contends there is no genuine issue to be tried." M.D. PA. L.R. 56.1. A party opposing a motion for summary judgment must file a separate statement of material facts, responding to the numbered paragraphs set forth in the moving party's statement and identifying genuine issues to be tried. Id. Unless otherwise noted, the factual background herein derives from the parties' Rule 56.1 statements of material facts. (See Docs. 32, 40). To the extent the parties' statements are undisputed or supported by uncontroverted record evidence, the court cites directly to the statements of material facts.

Dollar General and exited her vehicle, unaware that the flashing lights were meant for her.  (See Doc. 32 ¶ 11;[2] see also Doc. 32-1 at 4; Doc. 32-2, Loomis Dep. 190:7-191:12).  Officer Diddick parked his cruiser, exited, and confronted Loomis as she was walking into Dollar General.  (See Doc. 32 ¶ 13; Doc. 32-1 at 4; Doc. 32-3, Stanziale Dep. 66:16-71:22).

Why Officer Diddick's commenced the encounter is disputed.  (See Doc. 32 ¶ 11; Doc. 40 ¶ 11).  According to Officer Diddick's police report, he spotted Loomis driving with an inoperable taillight.  (See Doc. 32-1 at 4).  However, after Loomis pulled her car into the parking lot, Officer Diddick describes spotting "a small thin object" in Loomis's hand that was white in color and "appeared to be thinner in size th[a]n a cigarette," *i.e.*, a marijuana joint.  (See id.; see also Doc. 32 ¶ 17).  Loomis contends that her taillight was not inoperable and that Officer Diddick only invented the taillight justification midway through their encounter.  (See Loomis Dep. 31:15-33:10, 182:7-183:14).  According to Loomis's testimony, Officer Diddick repeatedly stated throughout their encounter that he pulled her over because he saw her smoking a "joint."  (See Loomis Dep. 73:18-20, 182:9-15, 188:14-18; see also

---

[2] In addition to providing responses Officer Diddick's statements of fact, Loomis filed a document styled as "Counter Statement of Facts."  (See Doc. 41). Neither Federal Rule of Civil Procedure 56 nor Local Rule 56.1 authorizes this filing, and Loomis did not request leave of court therefor.  We thus decline to accord these paragraphs the evidentiary weight contemplated by Rule 56.1.  See Barber v. Subway, 131 F. Supp. 3d 321, 322 n.1 (M.D. Pa. 2015) (Conner, C.J.); see also Rau v. Allstate Fire & Cas. Ins. Co., 793 F. App'x 84, 87 (3d Cir. 2019) (nonprecedential) (citing with approval, *inter alia*, Barber, 131 F. Supp. 3d at 322 n.1, in holding that district courts enjoy wide discretion in interpreting their local rules).  Nonetheless, we have examined the entire Rule 56 record, including plaintiffs' counterstatement, in resolving the instant motion.

Doc. 32-1 at 6). Loomis vehemently denies smoking or possessing a joint at the time of the stop. (See Loomis Dep. 81:2-3, 84:11-12, 91:19-22, 182:2, 201:6-11, 210:3-10).

Whatever Officer Diddick's reason for initiating the encounter might have been, the parties agree Officer Diddick ordered Loomis to "get on the ground." (See Doc. 32 ¶ 13; see also Loomis Dep. 36:1-4, 70:4-71:1). When Loomis inquired as to the reason she needed to get on the ground, Officer Diddick informed her that she "had drugs" and again ordered her on the ground. (See Doc. 32 ¶¶ 14-15; Loomis Dep. 71:15-22). Officer Diddick then forced Loomis onto the ground. (See Doc. 32 ¶ 16; Loomis Dep. 72:16-22, 95:6-8). Once on the ground, Loomis demanded a second officer be present. (See Doc. 32 ¶ 15; Loomis Dep. 72:19-73:10, 73:20-21). Officer Diddick ultimately allowed Loomis to stand up, ordered her to stay with her vehicle, and put in a request for a second officer. (See Loomis Dep. 72:19-73:10, 73:22-25; see also Doc. 32 ¶¶ 15-16).

At some point, Officer Diddick returned to Loomis and informed her that he was going to search her vehicle. (See Loomis Dep. 74:1-11). The factual basis for Officer Diddick's decision to search Loomis's vehicle is disputed. According to his police report, Officer Diddick observed, upon initially approaching Loomis's vehicle, "suspected marijuana residue" strewn across the dashboard, center console, and both front floor wells. (See Doc. 32-1 at 4). He claims that when he returned to Loomis's vehicle after addressing administrative matters in his own vehicle, he noticed Loomis had suspiciously cleaned the residue off the dashboard. (See id.) Loomis disputes the existence of any visible marijuana residue and flatly

3

denies ever cleaning anything off the dashboard. (See Loomis Dep. 81:8-14, 199:10-21, 204:13-16, 206:22-207:12).

Eventually, a second officer, Jim Smith, arrived. (See Doc. 32 ¶ 17). Officer Smith informed Loomis that Officer Diddick had seen her smoking a joint and that he was going to join in searching her vehicle. (See id.; see also Loomis Dep. 74:1-11). Loomis's vehicle was packed with personal items because she was in the process of moving. (See Loomis Dep. 194:12-17, 194:20-195:13, 204:19, 220:11-221:8). The density of personal items in the vehicle resulted in a protracted search process that stretched out for approximately an hour. (See id. at 92:5-7, 157:22-158:6, 182:19-23, 194:8-14, 221:6-8). The search produced a marijuana grinder, a small amount of marijuana, and some marijuana residue. (See Doc. 32 ¶¶ 5-7, 18). Officer Diddick additionally searched Loomis's purse and person. (See Loomis Dep. 193:24-194:11, 209:11-22). Officer Smith administered a sobriety test, which Loomis passed. (See Doc. 32 ¶ 26). None of the searches produced a marijuana joint. (See Doc. 32-1 at 4-5; Stanziale Dep. 23:4-20; Loomis Dep. 92:12-15, 108:4, 183:8-9, 205:5-6, 205:11-12, 220:21-23, 223:2-3).

While the vehicle search was ongoing, Officer Smith summoned a female deputy in the employ of the Susquehanna County Sheriff, Katherine Stanziale, to the Dollar General for the purpose of strip-searching Loomis. (See Doc. 32 ¶¶ 19, 25, 27; see also Doc. 32-1 at 5-6). Because of cold weather, Deputy Stanziale conducted the strip search of Loomis in the office of the Dollar General, which Loomis noticed was equipped with a security camera. (See Doc. 32 ¶¶ 20-21, 27-28; Doc. 32-1 at 6; Loomis Dep. 109:2-110:4, 165:17-167:6). Officers Diddick and Smith were not

present during the strip search.  (See Doc. 32-1 at 6; Loomis Dep. 216:22-24, 217:18-19).  During the search, Loomis removed her dress.  (See Doc. 32-1 at 6; Loomis Dep. 168:8-169:14, 218:12-13).  The strip search produced no additional evidence of criminal activity.  (See Doc. 32 ¶ 22).

After the conclusion of the vehicle and strip searches, Officers Diddick and Smith informed Loomis that she was free to leave and would receive a ticket in the mail should Officer Diddick decide to cite her.  (See id. ¶ 23; Loomis Dep. 221:11-25).  Officer Diddick eventually issued to Loomis three citations, two for drug-related misdemeanors and one for a summary traffic violation related to the purportedly inoperable passenger side tail lamp.  (See Doc. 32-1 at 2; see also Doc. 32 ¶ 24).  Loomis ultimately pled guilty to a disorderly conduct charge; the rest of the charges related to the January 30, 2018 incident were dropped.  (See Doc. 32 ¶ 24).

Loomis filed a lawsuit in the Court of Common Pleas of Susquehanna County in January of 2020, asserting claims against Officer Diddick, the Montrose Police Department, and Dollar General.  Defendants timely removed the suit to this court.  Loomis voluntarily dismissed her claim against Dollar General, and we dismissed Loomis's claim against the Montrose Police Department.  Following a period of discovery, Officer Diddick filed the pending motion for summary judgment.  The motion is fully briefed and ripe for disposition.

## II. **Legal Standard**

Through summary adjudication, the court may dispose of those claims that do not present a "genuine dispute as to any material fact" and for which a jury trial would be an empty and unnecessary formality.  FED. R. CIV. P. 56(a).  The burden of

5

proof tasks the nonmoving party to come forth with "affirmative evidence, beyond the allegations of the pleadings," in support of its right to relief. See Pappas v. City of Lebanon, 331 F. Supp. 2d 311, 315 (M.D. Pa. 2004); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). The court is to view the evidence "in the light most favorable to the non[]moving party and draw all reasonable inferences in that party's favor." Thomas v. Cumberland County, 749 F.3d 217, 222 (3d Cir. 2014). This evidence must be adequate, as a matter of law, to sustain a judgment in favor of the nonmoving party on the claims. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250-57 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-89 (1986). Only if this threshold is met may the cause of action proceed. See Pappas, 331 F. Supp. 2d at 315.

## III.  Discussion

Loomis asserts a claim against Officer Diddick under 42 U.S.C. § 1983, asserting he violated her Fourth Amendment rights during the events of January 18, 2018. (See Doc. 35 at 7-8). Section 1983 creates a private cause of action for redressing constitutional wrongs committed by state officials. See 42 U.S.C. § 1983. The statute is not a source of substantive rights but serves as a mechanism for vindicating rights otherwise protected by federal law. See Gonzaga Univ. v. Doe, 536 U.S. 273, 284-85 (2002); Kneipp v. Tedder, 95 F.3d 1199, 1204 (3d Cir. 1996). Loomis argues that genuine disputes of fact preclude summary judgment. (See id. at 5). The purported factual disputes are best organized around three alleged intrusions on Loomis's Fourth Amendment rights: (1) the initial traffic stop, (2) the

6

search of Loomis's vehicle, and (3) the strip search.  We will address the intrusions *seriatim*.

### A.  Traffic Stop

The parties agree the encounter between Loomis and Officer Diddick on January 30, 2018, initially constituted a traffic stop despite Loomis having exited her vehicle when the encounter commenced.  (See Doc. 33 at 4-5; Doc. 35 at 1).  An officer may stop a vehicle whenever they have reasonable suspicion that the vehicle has committed a traffic violation.  See Heien v. North Carolina, 135 S. Ct. 530, 536 (2014); United States v. Delfin-Colina, 464 F.3d 392, 396-97 (3d Cir. 2006) (citing Whren v. United States, 517 U.S. 806, 810 (1996)).  Reasonable suspicion exists when the officer (1) identifies "the ordinance or statute that they believe ha[s] been violated," and (2) provides "specific, articulable facts" supporting "an objective determination of whether any officer could have possessed reasonable suspicion of the alleged infraction."  See Delfin-Colina, 464 F.3d at 399.  Even when the officer's reasonable suspicion is based on a mistake of fact, no constitutional violation exists as long as the mistake of fact was reasonable under the circumstances.  See id. at 398.

Officer Diddick's justification for the stop is a genuine dispute of material fact.  If Diddick actually believed he observed Loomis's taillight was inoperable or spotted Loomis smoking marijuana while driving, he unquestionably had reasonable suspicion for initiating a traffic stop.  See 75 PA. CONS. STAT. § 4303(b) ("Every vehicle operated on a highway shall be equipped with a rear lighting system."); Carbone v. Salem, 788 F. App'x 130, 133 (3d Cir. 2019) (nonprecedential)

7

(holding driving under the influence of marijuana violates 75 PA. CONS. STAT. § 3802(d)(1)(i)). However, Loomis contends that Diddick observed neither. (See Doc. 35 at 2, 5). Her position is that Diddick invented both justifications out of whole cloth in order to retroactively justify an illegal stop. (See id.)

Loomis's contention is not without support in the record. Loomis's deposition testimony repeatedly describes Diddick shifting the goal posts regarding his reason for stopping her. (See Loomis Dep. 31:15-33:10, 182:7-183:14). Diddick also omitted any mention of the possible physical encounter that took place near the entrance to Dollar General from his police report. (See Doc. 32-1 at 4). A reasonable jury could rely on such evidence to infer Diddick lied about Loomis's conduct to obfuscate his own questionable conduct. In essence, the contradictions between Diddick's and Loomis's versions of events are questions of credibility; questions of credibility are the domain of a jury. See Carvalho-Grevious v. Delaware State Univ., 851 F.3d 249, 262 (3d Cir. 2017) (citing Anderson, 477 U.S. at 255). We will deny Diddick's motion on this issue.

### B.     Vehicle Search

Law enforcement officers are generally required by the Fourth Amendment to obtain a warrant before conducting a search. See Maryland v. Dyson, 527 U.S. 465, 466 (1999). Nonetheless, under the "automobile exception" to the warrant requirement, law enforcement may conduct a warrantless search of a vehicle if there is "probable cause to believe that the vehicle contains evidence of a crime." See United States v. Donahue, 764 F.3d 293, 299-300 (3d Cir. 2014) (citations omitted). If there is a "fair probability" that evidence of a crime or contraband

would be found in a vehicle, then probable cause to search the vehicle exists. See id. at 301 (quoting Illinois v. Gates, 462 U.S. 213, 238 (1983)). Whether probable cause exists is an objective determination based on the totality of the circumstances present at the time of the search. See United States v. Williams, 413 F.3d 347, 353 n.6 (3d Cir. 2005).

We find a genuine dispute of fact prevents us from granting Officer Diddick's motion on this point. According to Officer Diddick's police report, he relied on three observations in deciding there was probable cause to search Loomis's vehicle. (See Doc. 32-1 at 4). First, after pulling Loomis over, Officer Diddick claims he observed Loomis smoking a joint through the rear windshield of her vehicle. (See id.) Second, upon approaching Loomis's vehicle, Officer Diddick observed "suspected marijuana residue" strewn across the dashboard, center console, and both front floor wells. (See id.) Third, when Officer Diddick returned to Loomis's vehicle after addressing administrative matters in his own vehicle, he noticed Loomis had suspiciously cleaned the residue off the dashboard. (See id.)

Loomis disputes each of Diddick's observations. As previously discussed, she insists she was neither smoking nor in possession of a joint. (Doc. 40 ¶ 4; see also Loomis Dep. 81:2-3, 84:11-12, 91:19-22, 182:2, 201:6-11, 210:3-10). Loomis denies in her deposition testimony that there was any visible marijuana residue inside her vehicle; she contends Officer Diddick only found residue under the passenger seat after multiple searches of her vehicle. (See Loomis Dep. 81:8-14, 199:10-21). Loomis also denies wiping anything off the dashboard. (See id. at 204:13-16, 206:22-207:12). Once again, the contradictions between Loomis's and Diddick's versions of events

9

boil down to credibility, and credibility determinations are inappropriate at the motion for summary judgment stage. Carvalho-Grevious, 851 F.3d at 262. We will deny Diddick's motion on this issue.

### C. Strip Search

Loomis similarly contends that the strip search violated her constitutional rights. (See Doc. 35 at 6-7). We find there are genuine disputes of material fact that preclude us from being able to decide at this juncture whether, as a matter of law, the strip search violated Loomis's constitutional rights or if Officer Diddick is entitled to qualified immunity.

First, the parties dispute whether Loomis consented to the search. (See Doc. 32 ¶¶ 8, 29, 34; Doc. 40 ¶¶ 8, 29, 34; see also Doc. 32-1 at 6 (Deputy Stanziale's police report stating Loomis consented to a strip search); Loomis Dep. 84:13-24, 109:25-110:11, 215:23-218:3, 219:15-17 (Loomis denying she consented)). If Loomis voluntarily consented, then the strip search did not violate her Fourth Amendment rights. See Schneckloth v. Bustamonte, 412 U.S. 218, 219, 248-49 (1973); see also Reppert v. Marino, 259 F. App'x 481, 492 (3d Cir. 2007) (nonprecedential) (citing Schneckloth, 412 U.S. at 219, 226, 248-49).

Second, the record is unclear as to whether Officer Diddick or Officer Smith ordered the search. Officer Diddick insists that Officer Smith ordered the search. (See Doc. 40 at 10; see also Doc. 32-1 at 6 (Deputy Stanziale attributing the search request to Officer Smith); Stanziale Dep. 11:20-24, 23:21-24:2 (same)). But Officer Diddick's position is contradicted by his own police report and Loomis's testimony. (See Doc. 32-1 at 5; Doc. 32 at 84:12-16, 94:23-24, 216:20-21). Officer Diddick's

10

liability under Section 1983 is limited only to conduct in which he was personally involved, personally directed, or, as the lead officer on the scene, had knowledge of and acquiesced in.  See Jutrowski v. Township of Riverdale, 904 F.3d 280, 291 (3d Cir. 2018) (citations omitted); Baker v. Monroe Township, 50 F.3d 1186, 1190-91 (3d Cir. 1995).  Even if Diddick did not order the search, Loomis testified that Officer Diddick was the lead officer on the stop and insisted on the location for the strip search and had knowledge of the security cameras at least after the fact.  (See Loomis Dep. 84:19-24, 91:6-12, 108:23-109, 168:8-17).  Assuming the strip search violated Loomis's rights, a reasonable jury could find that Officer Diddick acquiesced in the violation of Loomis's rights.  See Baker, 50 F.3d at 1190-91.

    Lastly, the parties are entirely silent regarding what the court views to be two crucial issues—the custody status of Loomis at the time of strip search and whether a Dollar General office equipped with a security camera constitutes a public location.  Both issues have significant implications for whether Officer Diddick had sufficient justification for the search and whether he is protected by qualified immunity. [3]  See Curley v. Klem, 499 F.3d 199, 208 (3d Cir. 2007) ("[O]ur precedent

---

[3] The Fourth Amendment requires courts to consider "the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted" in determining the reasonableness of a warrantless search.  See Bell v. Wolfish, 441 U.S. 520, 559 (1979).  We view Loomis's custody status and location at the time of the strip search to be vital to our constitutional and qualified immunity analysis.  The prevailing consensus from courts that have considered warrantless searches incident to arrest is that these intrusive searches must be supported by, at minimum, reasonable suspicion of concealment of weapons or contraband.  See United States v. Parker, 458 F. Supp. 3d 260, 265 (M.D. Pa. 2020) (Conner, C.J.) (collecting cases).  However, strip searches of individuals subject to mere investigative detention, absent exigent circumstances, must meet a higher standard.  See Ybarra v. Illinois, 444 U.S. 85, 91,

makes clear that [intense factual disputes involving qualified immunity] must be resolved by a jury after a trial") (citations omitted). We must deny Officer Diddick's motion for summary judgment on this aspect of Loomis's claim.[4]

### IV.     Conclusion

We will deny Officer Diddick's motion for summary judgment. An appropriate order shall issue.

> /S/ CHRISTOPHER C. CONNER
> Christopher C. Conner
> United States District Judge
> Middle District of Pennsylvania

Dated:     August 19, 2022

---

100 S. Ct. 338, 342, 62 L. Ed. 2d 238 (1979); Doe v. Groody, 361 F.3d 232, 243 (3d Cir. 2004); see also Towns v. Stannard, 431 F. Supp. 3d 44, 64 (N.D.N.Y. 2019) (collecting cases); Timberlake by Timberlake v. Benton, 786 F. Supp. 676, 690 (M.D. Tenn. 1992) (same). Additionally, we are aware of district court decisions denying qualified immunity to police officers who engaged in unjustified strip searches under circumstances similar to those at issue in this action. See, e.g., Gallagher v. Green, No. CV 12-3840, 2016 WL 3213346, at *4-6 (E.D. Pa. June 10, 2016) (strip search of an individual suspected of a misdemeanor); Burke v. Township of Cheltenham, 742 F. Supp. 2d 660, 678-79 (E.D. Pa. 2010) (strip search in public with little justification).

[4] Officer Diddick also moves for summary judgment on Loomis's claim for punitive damages. (See Doc. 33 at 13). Punitive damages are available under Section 1983 when "the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." See Smith v. Wade, 461 U.S. 30, 56 (1983). Should Loomis prevail at trial on the factual disputes identified above, Officer Diddick's conduct may meet the standard for punitive damages. Accordingly, we must deny Diddick's motion on this issue.